COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Ortiz and Chaney
Argued at Richmond, Virginia


JOHN ALBERT BRANCHE, JR.

MEMORANDUM OPINION* BY
v.        Record No. 1343-24-2                          JUDGE DANIEL E. ORTIZ
DECEMBER 9, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Elena Kagan, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

C. David Sands III, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Mary Catherine Talbott, Assistant
Attorney General, on brief), for appellee.


A jury convicted John Albert Branche, Jr. of possessing a firearm as a violent felon.

Branche challenges the conviction, arguing that the trial court erroneously admitted testimony

from the investigating officer. He also argues that the evidence was insufficient to support his

conviction. Finding no error in judgment, we affirm the conviction.

BACKGROUND[1]

On September 27, 2023, Chesterfield Police Officers Matthews and Granado went to

room 205 at the Interstate Inn in response to a reported overdose. When the officers arrived, the

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing
party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting
*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that
conflicts with the Commonwealth's evidence and regard as true all the credible evidence
favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence.
*Cady*, 300 Va. at 329.

UNPUBLISHED

door was open and they saw a shirtless man, later identified as Branche, unconscious and breathing heavily on the bed farthest from the door. While the officers administered Narcan[2] and monitored Branche's response, Officer Matthews saw a black firearm within Branche's reach in plain view on the floor between the nightstand and the bed that Branche was lying on. The only person in the vicinity of the room was the cleaning woman.

Officer Matthews put on gloves, collected the firearm, and placed it on the unmade bed closest to the door before securing the weapon. The nine-millimeter Smith & Wesson M & P was loaded and later determined to be operable. Officer Matthews also found two loaded nine-millimeter magazines in the hotel room.

Officer Matthews administered sternal rubs to Branche's chest with his gloved hands.[3] After paramedics arrived, Officer Matthews secured the firearm in the trunk of his patrol car, went to the management office, and learned that room 205 was registered to Branche.[4] Through police databases, Officer Matthews identified Branche as the unconscious man and learned that he had a prior felony conviction. When Officer Matthews returned to the room, Branche was conscious but incoherent; he made no statements before he was transported to the hospital. Branche was arrested several weeks later.

In December 2023, Officer Matthews collected buccal swabs from Branche. The firearm and Branche's buccal swabs were submitted for forensic analysis. DNA testing determined that Branche could not be eliminated as a major contributor to the DNA found on the gun.

---

[2] Narcan is an over-the-counter drug that treats opioid overdoses.

[3] Officer Matthews explained that he made a fist and rubbed Branche's sternum at a fast pace to try to wake Branche.

[4] A picture of the recovered firearm was shown to the jury.

At trial, forensic scientist Keena Heise testified that she could not determine *how* DNA got onto the recovered gun, only that there was a mixture of DNA profiles on the recovered firearm. Heise also testified that it is possible for DNA to be transferred from one item to another with gloves.

Officer Matthews recounted the facts recited above. He testified that he touched the recovered firearm with his gloved hands after administering sternum rubs to Branche's bare chest. He attested that he went to the hotel manager and inquired who had rented room 205. Branche objected to this testimony as hearsay. The trial court noted that Officer Matthews had not answered yet and instructed the prosecutor to proceed. Officer Matthews stated that the hotel manager gave him the name of the person registered to room 205; he then used that information to determine who was unconscious in the room. Over Branche's continued objections, Officer Matthews explained that he used the registration to search police databases to find a picture of "the individual in question," which confirmed that Branche was the unconscious individual on the bed.

The Commonwealth then played a jail call Branche initiated at 6:48 p.m. on the day of his arrest.[5] During the call, Branche explained to the call's recipient that officers got him "charged for it . . . for the gun." The call's recipient clarified, "that they found in the hotel?" Branche responded, "yes."

At the close of the Commonwealth's evidence, Branche moved to strike the charge, arguing that the evidence failed to prove that he actually or constructively possessed the firearm. The trial court denied the motion. Branche presented no evidence and renewed his motion to strike the charge, which the trial court again denied. After closing arguments, the jury convicted Branche of the charge and recommended a sentence of five years of incarceration.

---

[5] The recorded call was played for the jury.

At the sentencing hearing, Branche moved to set aside the verdict. He argued that the evidence failed to prove that he possessed the firearm. He noted that no one saw him with the firearm while conscious. When he was seen in proximity of the firearm, he was either unconscious or incoherent. Thus, he contends, he did not know of the presence and character of the recovered firearm. Branche further argued that the DNA was transferred to the gun when Officer Matthews picked it up with his gloved hands after administering sternal rubs on Branche's bare chest in the same gloves. Finally, he claimed that someone could have come into the room and placed the gun there while he was unconscious. The trial court denied Branche's motion and sentenced him to five years of incarceration. Branche appeals.

## ANALYSIS

### I. Admissibility of Evidence

"When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse of discretion standard." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024). In this context, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Id.* (quoting *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay is generally inadmissible unless it falls within an exception." *Chenevert v. Commonwealth*, 72 Va. App. 47, 54 (2020). But "if a statement is not offered for its truth, it is not excludable as testimonial hearsay because it is not hearsay at all." *Bennett v. Commonwealth*, 69 Va. App. 475, 489 (2018). So statements offered to explain the conduct of the person to whom they were made are not hearsay and are admissible. *Swain v. Commonwealth*, 28 Va. App. 555, 560

- 4 -

(1998); *Weeks v. Commonwealth*, 248 Va. 460, 477 (1994). Thus, "[d]etermining whether a statement is offered to prove the truth or falsity of the matter asserted requires an analysis of the purpose for which the statement is offered into evidence." *Swain*, 28 Va. App. at 559.

Branche argues that the trial court erred when it admitted Officer Matthews's statements regarding the name of the registered guest. He asserts that the statements were hearsay, "even if the witness does not testify to the precise out of court statements that form the basis of his assertion." According to Branche, Officer Matthews's testimony was hearsay because it communicated what the manager said. We disagree.

The testimony merely recounted the steps Officer Matthews took in his efforts to identify the unconscious individual in the hotel room. Based on the information he received, Officer Matthews searched law enforcement databases and determined from a photograph in the database— and his own ability to see the individual in the hotel room—that Branche was the unconscious individual. Ultimately, the identification rested on Officer Matthews's personal observation of Branche. Under these circumstances, the trial court reasonably concluded that Officer Matthews did not articulate an out-of-court statement made by the hotel manager.

## II. Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

It is a felony for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." Code § 18.2-308.2(A). Possession can be actual or constructive. *Raspberry v. Commonwealth*, 71 Va. App. 19, 29-30 (2019).

> To support a conviction based upon constructive possession, the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the contraband and that the contraband was subject to his dominion and control.

*Garrick*, 303 Va. at 183. Proximity to the firearm "is a circumstance probative of possession and may be considered as a factor in determining whether [the defendant] possessed the" firearm. *Id.* at 184 (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). The factfinder may consider the open visibility of the firearm in the location where it was found. *See Smallwood v. Commonwealth*, 278 Va. 625, 631 (2009) (affirming conviction where appellant occupied a vehicle in which the firearm was found "in plain view," even though the firearm was owned by another passenger in the vehicle).

"The 'reasonable hypothesis of innocence' concept is also well defined. The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the

evidence itself, and not from the imagination' of the defendant." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor*, 294 Va. at 512). "While the Commonwealth must prove that the accused committed the crime beyond a reasonable doubt, it has to do so by excluding every reasonable hypothesis of innocence flowing 'from the evidence itself, and not from the imagination of defendant's counsel.'" *Sample v. Commonwealth*, 303 Va. 2, 17 (2024) (quoting *Tyler v. Commonwealth*, 254 Va. 162, 166 (1997)).

Branche argues, in part, that there was a reasonable hypothesis of innocence: the firearm and magazines were placed in the room when he was unconscious but before police arrived. Branche claims that "[t]here was evidence that someone else had been in the room before police arrived." He also argues that the Commonwealth's own evidence suggested that Branche's DNA could have been transferred to the recovered gun from the officer's gloves. "Under longstanding appellate principles, whether an 'alternative hypothesis of innocence is reasonable is a question of fact' that will be reversed on appeal only if plainly wrong." *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016) (quoting *Stevens v. Commonwealth*, 38 Va. App. 528, 535 (2002)).

The firearm was found in plain view and within Branch's reach between the nightstand and the bed that Branche was lying on. Branche could not be eliminated as a major DNA contributor to the DNA found on the firearm. A rational factfinder could conclude that Branche held the firearm before he became unconscious. Although the door to the room was open when officers arrived, officers only saw the cleaning woman near the room. A rational factfinder could conclude that hotel management left the door open when they found Branche unconscious to facilitate the officers' response.

Branche also argues that the evidence failed to prove that he knowingly possessed the firearm. He notes that he was unconscious when officers arrived and although he regained consciousness, he remained incoherent before he was transported to the hospital. Those

circumstances, Branche argues, show that he was unaware of the presence and character of the firearm and was unable to exercise dominion and control over it. Branche also contends that the jail call only proved that he knew that he had been charged with possessing a firearm; it was not an admission that he knew the firearm was in the room while he was unconscious.

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley*, 69 Va. App. at 629 (alteration in original) (quoting *Pijor*, 294 Va. at 512). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

The evidence established that the officers found Branche unconscious in the hotel room. After administering Narcan, Officer Matthews saw the firearm in plain view on the floor, within Branche's reach. Forensic testing determined that Branche could not be eliminated as a contributor to the major DNA profile found on the gun. Branche's jail call permitted the jury to infer that he knew that the firearm was in the hotel room. The record evidence supports the jury's reasonable conclusion that Branche possessed the firearm before he was rendered unconscious.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*